**HALL v. STAHL.**
Patent Appeals No. 3095.

Court of Customs and Patent Appeals.
June 12, 1933.

BLAND and HATFIELD, Associate Judges, dissenting.

Burnie J. Craig and Mary K. Saunders, of Washington, D. C., for appellant.

Bernard C. Frye, of Akron, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference proceeding was instituted and declared by the United States Patent Office on December 1, 1928, between the patent of the appellant, Charles S. Hall, No. 1,682,961, of September 4, 1928, granted on an application filed March 6, 1926, and the application of the appellee, Karl Stahl, filed June 28, 1920. The subject-matter at issue is improvements in mechanism for recording the pressure and volume of gas cells in lighter-than-air aircraft, of the type ordinarily known as rigid or semirigid. There are two counts in the interference, which are as follows:

"1. An air craft having a gas holding compartment therein, automatic pressure responsive means associated with said compartment, a station remote from said means and electrically operated means at said station connected with said first mentioned means for indicating the pressure in said compartment.

"2. An air craft having a gas holding compartment therein, said compartment including a movable portion, a member automatically responsive to movement of said portion, a station remote from said member and electrically operated means at said station connected with said member for indicating the changes in volume of said compartment."

These correspond with claims 16 and 17 of the Hall patent, and are copied therefrom by the appellee.

The appellee claims the benefit of the so-called Nolan Act of March 3, 1921, 41 Stat. 1313 (35 USCA §§ 80–87), by virtue of a patent granted to him in Germany on August 8, 1918, and published there on March 28, 1922, covering the same subject-matter. If he is given this date, his disclosure antedates that of Hall by a considerable period.

After the declaration of the interference, Stahl moved to dissolve, claiming a statutory bar because of his German patent aforesaid, and moved for judgment. Hall also moved to dissolve on several grounds, to wit, on unpatentability of the Stahl disclosure, inoperativeness, and because the counts of the interference do not read upon the Stahl disclosure.

The Law Examiner denied both motions. An order to show cause was thereupon entered, and the party Hall abiding by his mo-

tion, a decision awarding priority to Stahl was rendered by the Examiner of Interferences, which, on appeal to the Board of Appeals, was affirmed as to count 1 and reversed as to count 2. A request for reconsideration was filed by Stahl, and, upon reconsideration, the Board of Appeals changed its decision and awarded priority to Stahl on both counts. In this decision the Board held that both counts of the interference read upon the Stahl disclosure. Hall has brought the matter here, and urges, in this court, that the Board of Appeals was in error in holding that the counts of the interference read upon the Stahl disclosure. This seems to be the only question involved.

Hall's disclosure shows an outside frame, with an interior rigid gas container attached to said outside frame. The bottom of this gas container is vertically movable, and is so arranged, with flexible gas-proof fabric connections, that, as the volume of gas in the gas container varies, the bottom portion will rise and fall accordingly. As the volume decreases, the bottom will rise; as it increases, it will be lowered, and these successive changes in volume are indicated by means of electrical connections on an indicator in the pilot's car, so that at all times the pilot is able to observe the exact condition of the volume of gas in his gas container.

There is also arranged within the gas container a pressure actuated diaphragm, connected with which is an operating rod. By means of this operating rod, electrical contacts are made, and the changes in pressure within the gas container are shown on an indicator in the pilot's car. The pressure diaphragm is so arranged that any change in the pressure of the gas in the container is recorded automatically. By this means, the pilot is constantly advised of the pressure within his gas container.

There is no doubt or uncertainty of the meaning of these counts, as applied to Hall's disclosure. Hall provides a means whereby the pilot may, at all times, be advised of the state of pressure and volume of his gas.

██ Stahl's application, and the showing made by his drawings and specification, are, to a considerable degree, ambiguous. The foreign patent upon which he relies cannot be aided by presumption or implication, but can only be given weight according to the matters which are therein actually disclosed. In re Gillam, 37 F.(2d) 959, 17 C. C. P. A. 877; In re Dann, 47 F.(2d) 356, 18 C. C. P. A. 1031.

Stahl shows the round rigid frame of an

airship, within which is shown a flexible bag or gas container. Whether the gas bag is attached to the rigid frame or not does not appear. It also is not shown whether the gas container is elastic or not. Stahl's drawings are as follows:

Stahl provides a method of recording volume by means of a wire dependent from the point a2 of his gas container. This wire passes over a series of pulleys to an indicator in the pilot's car, where it is supposed to register the volume of gas in the gas container. Stahl's pressure recording device is a plate which, by pressure thereon, operates certain electrical contacts, and by which a bell, or alarm, is sounded in the pilot's car. Neither the specification nor drawings are explicit as to the location of this pressure recording plate. It seems probable, from figure 1, and from appellee's specification, that this plate is located in the bottom of the rigid frame of the airship between the frame and the gas container. Stahl admits, by his statements in connection with his amendment of July 19, 1921, the following:

" * * * Although this movement is transferred onto the plate of the indicating device by pressure, there is no registration of variations in pressure, but merely of variations of form, the gas bag on coming to bear onto the plate causing a contact to be closed, thus indicating the moment where the gas bag is 'full.' "

It is also manifest from his specification that Stahl does not pretend to give the various degrees of pressure within his gas container from time to time, but only provides such apparatus as will indicate when the bag is full and bears against the pressure plate. He states, in his specification, that "The transmission by means of the plate takes place only in the case of a completely charged cell, when it permits a careful supervision of its condition."

He also states that his device will record "the excess pressure," and this seems to be the entire object of his pressure indicating means.

In this respect, as has been noted, whether the device will or will not record excess pressure is entirely conjectural, as the airship moves and inclines from side to side, and it is quite apparent that such pressure on the plate will vary according to the weight of the gas container which rests upon it.

As to the volume registering device, it is quite apparent, from Stahl's specification, that he does not expect this device to register all changes of volume in his gas container, but only "certain variations of form." This device also apparently is intended to advise the pilot or operator when the bag is full of gas, because it is stated: "In its deepest position, which corresponds to the taut condition of the cell the weight E closes a switch n of an electric circuit, thereby operating an alarm."

Here again the operation of this device must be conjectural. Whether the bag or gas container, when deflated, will cause the tip a2 to be lowered, and thus lower the indicating device, is uncertain, and depends, to a considerable degree, upon the fixation of the gas bag in the rigid frame. Even the tribunals of the Patent Office were somewhat at a loss to appreciate just what effect would be caused by a filling or deflation of this gas container, so far as the recording is concerned. This condition also must certainly be influenced by the oscillations of the gas container, and of its fabric, as the aircraft moves through the air.

The most that can be said for the Stahl disclosure, as it appears to the court, is that he has provided means by which the pilot or operator may be warned of certain conditions at what may be deemed the most important time, viz. of full pressure and complete inflation or deflation of the gas container.

As we view it, the counts of the interference, while given their broadest possible construction, if ambiguous, must be read in

the light of Hall's patent. Stahl contends that the counts, when reasonably read, are satisfied by a disclosure which shows that the pressure and volume of the gas containers are shown at certain critical or essential periods. On the other hand, Hall contends that the counts ought to be so read as to require a construction that such pressure and volume recording means show the pressure and volume at all times.

After carefully considering the disclosures involved, we are of the opinion that the appellant's contentions on this subject should be upheld. Count 1, it will be observed, calls for "automatic pressure responsive means," connected with the gas container for indicating "the pressure" in the compartment. It will be observed the count states *the* pressure, and not merely *pressure*. This language, to our minds, means a device for recording the pressure at all times. We are unable to conclude that this language is satisfied by a structure which at one possible time, which may or may not occur, according to conditions, records pressure. Especially is this true in view of the disclosure in Hall's patent, where all variations in pressure are recorded.

Count 2 also recites that the gas compartment includes a "movable portion" and a member automatically responsive to the movement of this portion. This language might be satisfied by the gas bag of Stahl, the lower end of which will move upward or downward, or from side to side, according to conditions. However, the succeeding language of the count recites that this automatic means will indicate "the changes in volume of said compartment." Here again we find the language *the changes,* and not *a change.* We cannot escape the conclusion that this language intends a device which will indicate, not alone the instant when the bag becomes full and taut, but other changes, and manifestly such changes as occur from time to time in the inflation or deflation of the gas container. This is essential knowledge for the operator to possess. It is stated in Stahl's specification: "For this reason, it is of great importance for the pilot to be *constantly* informed with regard to the charging condition of the gas-cells." (Italics ours.)

Being of opinion that the counts of the interference do not read upon Stahl's disclosure, the decision of the Board of Appeals must be, and it is hereby, reversed.

Reversed.

BLAND, Associate Judge (Dissenting).

This interference involves the mode of operation of a highly technical indicating device used on aircraft and balloons. It is not a subject-matter with which there is much familiarity except by those skilled in the art. The opinion of the majority reverses the concurring decisions of the tribunals below upon highly technical questions passed upon by such tribunals.

The structures of the two contending parties, while they accomplish substantially the same result (which is called for in the counts), do it by entirely different methods. No doubt appellant has been allowed, or is entitled to the allowance of, a number of claims directed to his specific structure. In the two counts involved he has broadly asked for more than he is entitled to because, in my judgment, the broad subject-matter of the counts is sufficiently disclosed in the application of the first inventor.

The majority opinion states that the Stahl application is ambiguous. It may be ambiguous or it may totally fail to disclose certain features not concerned with the involved counts, some of which features have been suggested in the opinion of the majority. Concerning the Stahl disclosure, the majority opinion states:

"It is also manifest, from his specification, that Stahl does not pretend to give the various degrees of pressure within his gas container from time to time, but only provides such apparatus as will indicate when the bag is full and bears against the pressure plate. He states, in his specification, that 'The transmission by means of the plate takes place only in the case of a completely charged cell when it permits a careful supervision of its condition.' * * *

"This device also apparently is intended to advise the pilot or operator when the bag is full of gas, because it is stated: 'In its deepest position, which corresponds to the taut condition of the cell the weight E closes a switch n of an electric circuit, thereby operating an alarm.'

"Here again the operation of this device must be conjectural. *Whether the bag or gas container, when deflated, will cause the tip a2 to be lowered, and thus lower the indicating device, is uncertain, and depends, to a considerable degree, upon the fixation of the gas bag in the rigid frame.* Even the tribunals of the Patent Office were somewhat at a loss to appreciate just what effect would be caused by a filling or deflation of this gas

container, so far. as the recording is concerned. This condition also must certainly be influenced by the oscillations of the gas container, and of its fabric, as the aircraft moves through the air. [Italics mine.]"

It is stated by the applicant Stahl in substance that the lower part of the bag to which the wire is attached will move up and down depending on the degree of inflation or· depression of the gas bag. The Patent Office tribunals concurred in this view, but the majority opinion is to the effect that this is "conjectural." The device of Hall, although admittedly more substantial and probably more accurate in its reaction to the pressure in the gas bag, nevertheless moves up and down in proportion to such pressure.

Again the following is found in the majority opinion:

" * * * Stahl contends that the counts, when reasonably read, are satisfied by a disclosure which shows that the pressure and volume of the gas containers are shown at certain critical or essential periods. On the other hand, Hall contends that the counts ought to be so read as to require a construction that such pressure and volume recording means show the pressure and volume at all times.

"After carefully considering the disclosures involved, we are of the opinion that the appellant's contentions on this subject should be upheld. Count 1, it will be observed, calls for 'automatic pressure responsive means,' connected with the gas container for indicating 'the pressure' in the compartment. It will be observed the count states *the* pressure, and not merely *pressure*. This language, to· our minds, means a device for recording the pressure at all times. We are unable to conclude that this language is satisfied by a structure which at one possible time, which may or may not occur, according to conditions, records pressure. Especially is this true in view of the disclosure in Hall's

patent, where all variations in pressure are recorded. [Italics quoted.]"

In my view the above-quoted part of the majority opinion involves error. The counts do not call for a means which will indicate the pressure *at all times*, although I am not satisfied that it will not do so. To say the least, it cannot be denied that there are times, during the inflation and deflation of a gas bag that the Stahl device will indicate the condition of the bag by sounding an alarm or otherwise, as is shown in the application. It seems obvious that at such times it will indicate the pressure or lack of pressure occasioned by such inflation or deflation, and that the volume of the compartment occupied by the gas will thereby be indicated.

To invent a device which at any critical time during such process could cause an alarm bell to ring, and thus indicate the gas pressure or the volume of the compartment taken up by the gas, would be a useful invention and would satisfy the counts at issue.

With due respect for the views of the majority, I know of no decision, either by the Patent Office or by any court, which gives the importance to the word "the" that is given to it by the majority. In effect, the majority holds that the statement in the count "indicating the pressure" is equivalent to a statement such as "indicating all of the pressure all of the time." This conclusion, I think, the majority is not warranted in making.

If the Stahl application does not disclose the subject-matter of the counts involved, it would be difficult to state what patentable subject-matter it does disclose. The effect, therefore, of the decision of the majority is to·hold that appellee's application and German patent would be invalid. In this holding I do not wish to participate.

HATFIELD, Associate Judge, concurs with the dissenting opinion.